No. 13,683.

FRIEDLAND *v.* AMERICAN BANKERS INSURANCE COMPANY
ET AL.
(52 P. [2d] 660)

Decided December 9, 1935.

Mr. SIMON QUIAT, Mr. SAMUEL S. GINSBERG, Mr. NATHAN H. CREAMER, for plaintiff in error.

Mr. EDGAR McCOMB, Mr. MILTON D. GREEN, for defendants in error.

*En Banc.*

MR. JUSTICE HOLLAND delivered the opinion of the court.

THIS action is for recovery of an alleged cash surrender value of a health and accident policy issued by the assignor of the defendant companies. Judgment was for plaintiff in the sum of $39.72 which he claims is insufficient and should have been for $400.89 with interest, under the law and evidence. To reverse the judgment, plaintiff brings the case here on writ of error.

On June 10, 1924, at Denver, Colorado, the Cloverleaf Life and Casualty Company, of Jacksonville, Illinois, authorized to do business in the state of Colorado, in consideration of a policy fee of $5 and an advance quarterly premium of $19.70, issued to plaintiff its policy, indemnifying him against accident and illness. The policy contained the following provisions, the subject of this controversy:

"Cash Surrender Value.

"L. The cash value of this policy shall be fifty per cent (50 per cent) of the premiums paid by the insured, less all prior benefits received, provided that this policy has been maintained in continuous force without delinquency for ten consecutive years from date of issue, and if at any time Standard Provision Sixteen becomes effective, it is agreed that the increased premium of five per cent charged for Paragraph F be returned, in addition to the unearned portion of the premium.

\*    \*    \*

"(16) The Company may cancel this policy at any time by written notice delivered to the insured or mailed to his last address as shown by the records of the Company together with cash or the Company's check for the unearned portion of the premium actually paid by the insured, and such cancellation shall be without prejudice to any claim originating prior thereto."

This policy was subsequently assigned by the insurer to the American Bankers Insurance Company, and by it, reassigned to the Great Northern Life Insurance Company both assignees fully assuming and agreeing to perform the obligations and conditions of the policy. Each and all of the insurance companies mentioned were represented by one Berkowitz as general collector of premiums during all of the time the policy in question was in force, and he was general agent for the companies a part of that time. Plaintiff, from the date of the policy to September 1, 1933, paid the sum of $728.90, represented by thirty-seven quarterly premium payments, all of which were accepted by the company. On September 1, 1933, Berkowitz received and accepted from plaintiff a further quarterly premium, which the defendants refused to accept and tendered a return thereof to plaintiff. September 14, the defendant American Bankers Insurance Company notified plaintiff that it would not renew the policy and subsequently, by letter, informed plaintiff that the policy was cancelled pursuant to provision (16) hereinbefore set out. Plaintiff demanded payment of the cash surrender value of the policy under its provisions, and upon refusal of his demand instituted this action.

The undisputed facts are that Berkowitz collected from plaintiff each of the policy premiums by calling at plaintiff's place of business; that the premiums were always paid as and when called for; that Berkowitz did not always call on the first of the month when the premiums became due and sometimes called from ten to twenty days later; that the defendant companies received, accepted and retained all of the premiums when remitted by Berko-

witz; that many of the premiums were received by the companies after the due date without objection, and that no mention of delayed payments was made by defendants to plaintiff in their letters in which they notified plaintiff of the cancellation of the policy. The evidence further shows that during the period of nine years and three months the policy was in force, plaintiff made no claims or secured any benefits under its terms.

Plaintiff's sole contention is that he has a fixed right to the cash surrender value of the policy and that the defendants are estopped from claiming a delinquency in the payment of premiums. The defense is based upon the claims that there was no cash surrender value under the policy; that defendants had the right to refuse to accept renewal premiums at any time and thereby terminate their liability under the contract; that the agent had no authority to change the policy or waive any of its provisions and that the subsequent acceptance of delinquent premiums amounted to a reinstating of the policy "but only to cover loss resulting from accidental injury thereafter sustained, and such sickness as may begin more than ten days after the date of such acceptance"; that there was no practical interpretation given to the insurance contract by the parties. Defendants base the above contentions upon provisions No. 2 and 3 of the policy, which read as follows:

"No statement made by the applicant for insurance not included herein shall avoid the policy or be used in any legal proceeding hereunder. No agent has the authority to change this policy or to waive any of its provisions. No change in this policy shall be valid unless approved by an executive officer of the Company and such approval be endorsed hereon.

"If default be made in the payment of the agreed premium for this policy, the subsequent acceptance of the premium by the Company or by any of its duly authorized agents shall reinstate the policy, but only to cover loss resulting from accidental injury thereafter sustained,

and such sickness as may begin more than ten days after the date of such acceptance.

Upon the question of there being no cash surrender value, the defendants stand squarely on the policy provision that the policy be maintained in continuous force for ten consecutive years from its date, and insist that upon the exercise of its right to cancel the policy, this policy was not in force for ten consecutive years. Plaintiff argues, and we believe logically, that the company could not, as here, exercise the cancellation provision in a manner to deprive him of what he claims to be an accrued right and benefit up to the time of cancellation, and he further contends that the right to cancel the policy is a contingent one, made so by the following policy provision: "* * * and such cancellation shall be without prejudice to any claim originating prior thereto." The insured could not make claim for payment of the surrender value, upon an uncancelled policy, prior to the end of the ten-year period, but where the insured had not breached the contract by his own act, he had a vested right thereto.

This surrender value was and is a part of the consideration for the continuous payment of premiums, and to permit the company capriciously to nullify this right which it had extended to the insured, would in effect be the perpetration of a fraud upon the insured. The simple facts before us, namely, the continuous payment of premiums for nine years and three months by the insured without a breach of the contract on his part, necessitates an application of the rule laid down in 32 C. J. 1247, §433, as follows: "Where the privilege of cancellation is exercised under circumstances which would make it operate as a fraud on insured, it is invalid and ineffective." This right was steadily accruing to the insured with an increasing liability upon the part of the insurer and could not be revoked by the insurer without the assent of the insured unless the intervening liability was acknowledged and properly satisfied.

That the policy was reinstated, and so considered by the defendant, even though the premium was in many instances paid after its due date, cannot well be denied by defendant. That the policy was in full force and effect September 1, 1933, seems to have been recognized by defendants from the fact that they attempted its cancellation. If the policy had not been fully reinstated and effective, a cancellation thereof would have been an uncalled-for procedure. According to the terms of the policy, the premiums were payable at the home office of the company, or to the person designated by the company to receive them. It is not disputed that Berkowitz was the person so designated and that he received all premiums paid upon the policy here in question. When he received a premium after its due date, and such premium was accepted and retained by the company, no discontinuance of the policy occurred, except on claims for sickness or accident disability arising within a limited time fixed by the policy. The acceptance of such premiums after the due date was not a prohibited change of the terms of the policy by the agent, and when the company accepted and retained them it waived the right to make, and is now estopped from making, the claim that the policy was suspended or became delinquent under the provisions requiring it to be continued in force for ten consecutive years from its date before the insured had a right to the payment of the cash surrendered value. This provision, unless liberally construed in favor of the insured, would be a snare and delusion to the policyholder and would allow the insurer to avoid liability in all cases after having received the benefits of the contract. Such a construction is consistent with justice and should be favored. Under the facts of this case, the insurance and the general provisions of the policy were continuous. The following text is applicable: ''So, when an insurer adopts a custom of accepting assessments on an accident policy after the due date, such belated payment is in regular order, and not

for reinstatement, so that the insurance is continuous."
3 Couch on Insurance, p. 2248, §681.

■ Effect should be given to the interpretation of the provisions of the policy by plaintiff and defendants, during the time it was admittedly in effect, and prior to this controversy. The fact that the only ground upon which defendants based their right of forfeiture in the notice of cancellation to plaintiff, was their right to cancel under the standard provision of the policy, would indicate that the defendants then considered the policy in full force and continuous effect, and not, as later and now claimed, to have been delinquent. The cases cited by defendants are not helpful because none of them involved a health and accident policy with a cash surrender provision, as is common in life insurance policies. In its application to this case, the law of waiver and estoppel is clearly stated in *Brotherhood v. Nolan,* 91 Colo. 181, 14 P. (2d) 179.

■ The case here under consideration was tried to the court without a jury and judgment entered in favor of plaintiff for $39.72, which undoubtedly was the result of a calculation as to the amount of premiums to be returned. In the light of the undisputed evidence in the case, this judgment, in amount, is against the law and the evidence; accordingly it should be and is reversed and the cause remanded with directions to modify the judgment to include the amount of the cash surrender value of the policy as may be correctly calculated therefrom, which plaintiff has alleged to be $400.89, together with interest on the amount found to be due at the rate of eight per cent per annum from September 1, 1933.

Mr. Justice Bouck did not participate.