**EXUM et al. v. LAUB.**

**No. 8129.**

Circuit Court of Appeals, Fifth Circuit.

Dec. 29, 1936.

Rehearing Denied Jan. 22, 1937.

George I. Shannon, of Amarillo, Tex. for appellants.

Edward P. Marshall, of Tulsa, Okl., for appellee.

Before HUTCHESON and HOLMES, Circuit Judges, and STRUM, District Judge.

STRUM, District Judge.

By assignment dated August 14, 1931, of an oil and gas lease now being operated by appellants, as trustees for Gibson Oil Corporation, the assignor George Laub (appellee here) reserved an overriding royalty of $\frac{1}{4}$ of all gas and oil produced by natural flow; $\frac{3}{16}$ by artificial power; "and provided further that in event the total production of all wells drilled upon said lease shall decline to a point below 200 barrels per day, the interest of the assignor so reserved shall be automatically reduced to an undivided $\frac{1}{8}$ of the gross production from said lease."

None of the wells, of which there are several, have been operated by a pump or artificial power. From completion of the first well, September 25, 1931, said lease had a potential natural production capacity of more than 200 barrels per day, but proration orders of the state of Texas, which became effective prior to completion of the first well, have at all times restricted the aggregate production of the lease to less than 200 barrels per day. If relieved of said proration orders, the wells would have at all times exceeded 200 barrels per day, natural flow.

Notwithstanding the effect of said proration orders, the assignee Gibson Oil Corporation through the pipe line purchaser of the oil, Magnolia Petroleum Company, to whom a division order had been given, paid appellee, Laub, on a basis of $\frac{1}{4}$ of

production from September 29, 1931, to and including August, 1935. On October 8, 1935, the then receiver of Gibson Oil Corporation, because the proration orders restricted total production to less than 200 barrels per day, declined to permit further payments on a basis of ¼, but insisted that settlement should be on a basis of ⅛, which attitude was adopted by appellants when appointed trustees of said assignee, Gibson Oil Corporation, in reorganization proceedings under section 77B of the Bankruptcy Act (11 U.S.C.A. § 207). Since October 8, 1935, the disputed ⅛ has been impounded, and Laub, the assignor, brought this suit to recover it and to compel future payments on a basis of ¼.

The District Judge found for plaintiff below, Laub, holding that "so long as the oil wells on said land produced, or are capable of producing, oil by natural flow in excess of 200 barrels per day," the assignor was entitled to ¼.

■ We agree with the District Judge that the phrase "in event the total production * * * shall decline to a point below 200 barrels per day" has reference to the natural producing ability of the wells, and not to an artificial restriction upon production imposed by state regulations in the exercise of its police power. "Decline," as here used, denotes a failing process; a tendency to a worse state; to become gradually impaired; a falling off or downward tendency.

■ Where a contract is clear and unambiguous, rules of construction should not be resorted to; the courts will enforce it according to its terms. We find no real ambiguity in the language here used. If the phrase in question be regarded as ambiguous, however, or susceptible of more than one shade of meaning, that interpretation will be adopted which the context in which it is found, the business to which it relates, and the circumstances in which it is used, disclose that the parties intended it to have, giving due weight to the purpose to be attained. Cocke v. Vacuum Oil Co. (C.C.A.) 63 F.(2d) 406; Dublin Electric & Gas Co. v. Thompson (Tex.Civ. App.) 166 S.W. 113; Ryan v. Kent (Tex. Com.App.) 36 S.W.(2d) 1007; 13 C.J. 521.

■ It is common knowledge that when pumping must be resorted to, the operator's overhead cost is substantially increased, and that when a well declines below 200 barrels per day natural flow, the operator's overhead is proportionately greater than when the well has a larger flow. It is customary in the Texas oil industry to require the royalty owner in these circumstances to reduce his royalty and thus share with the operator the burden of the decline. It is such a contingency— a decline inherent in the wells themselves— that is contemplated by the language of this assignment. The contract is the usual one for diminishing royalties where natural production declines. If reduction by proration had been in the minds of the parties, more apt language could, and no doubt would, have been used. Proration has the effect of "limiting" production, but such an artificially imposed limitation is not the equivalent of a "decline" in production if regard be had for the ordinary usage of this language in the oil industry.

The construction urged by appellants would require the assignor, solely because of proration, to accept for his oil ½ of what he bargained for, though there is no "decline" in the natural flow of the wells. Such a construction is not only illogical but inharmonious with ordinary experience and practice in the industry. Proration may greatly extend the period of time the operator must wait to receive the full return upon its investment in this venture. It will correspondingly increase the period of time the assignor must wait to receive the consideration for which he parted with his lease. The burden thus imposed by proration is mutual. If proration ultimately results in greater recovery, this advantage will be shared mutually by the parties.

■ We are fortified in our construction of the assignment by another cardinal principle that when a contract is ambiguous the construction adopted by the parties will be given great, sometimes controlling, weight by the courts. Uinta Tunnel Min. & Transp. Co. v. Ajax Gold Mining Co. (C.C.A.) 141 F. 563; Christenson v. Gorton-Pew Fisheries Co. (C.C.A.) 8 F.(2d) 689; 10 Texas Jur. § 171; 13 C.J. 546. The assignee, Gibson Oil Corporation, paid the assignor on a basis of ¼ for four years, never questioning its liability on that basis, although proration was in force during the entire time. It was the receiver of the Gibson Oil Corporation who first questioned the terms of the lease about October, 1935, after it had received a settled con-

struction by the parties thereto for four years.

Appellants rely largely upon Butler v. Jenkins Oil Corporation (Tex.Civ.App.) 68 S.W.(2d) 248, affirmed (Tex.Com.App.) 97 S.W.(2d) 466. We regard that case as inapposite here. The language of that lease was "in the event said well or wells 'produce' less than 190 barrels per day," the royalty should be reduced. The Texas courts held that the word "produce" was not ambiguous, and that the parties contracted with respect to actual production, that is, the number of barrels actually brought to the surface, in the absence of some hindering cause for which the assignee was responsible. That is quite a different situation from one where, as here, an assignor contracted to accept a lesser royalty in event the production "declined" below a certain number of barrels per day. We are convinced that it was the purpose of the parties to this assignment to give the assignor full royalty until the wells "declined," i. e., fell off, in natural production.

Affirmed.