### FERGUSON v. HOUSH et al.
### No. 12134.

Court of Civil Appeals of Texas. Galveston.
Jan. 19, 1950.

Rehearing Denied March 9, 1950.

Hugh M. Patterson, George T. Barrow, and Joe Louis, of Houston, Raymond A. Cook, of Houston, Baker, Botts, Andrews & Parish, of Houston, of counsel, Andrews, Kurth, Campbell & Bradley, of Houston, of counsel, for appellants.

Joseph W. Moore, of Houston, Fouts, Amerman & Moore, of Houston, of counsel, for appellees.

GRAVES, Justice.

This is an action for declaratory judgment, brought under Article 2524—1, Ver-

non's Ann.Civ.St. The primary issue is the construction of the terms "pumping wells" and "flowing wells", as used in the overriding-royalty reservation-clause in an assignment of an oil-and-gas-lease.

Appellant Joe L. Ferguson was plaintiff below, and appellees, C. N. Housh, Lester G. Housh, and E. G. Thompson, together with Stanolind Oil Purchasing Company and Eastern States Petroleum Company, Inc., were defendants below. Appellant Mrs. Louise C. Landry (formerly Louise Crimmins), joined by her husband, was made cross-defendant, and she made common-cause with appellant Joe L. Ferguson. Beulah Gulley Richard, individually, and as independent executrix of the estate of E. V. Richard, was also made cross-defendant, but she did not answer.

From a judgment denying the construction sought by appellant, and refusing to order reformation of the assignment, appellant has appealed.

The assignment contains the following overriding-royalty provisions:

"Excepting, however, that the assignors do hereby reserve unto themselves, their heirs, successors, and assigns, in the proportions of one-half to Joe L. Ferguson, and one-fourth (¼) to Beulah Gulley Richard, individually and as independent executrix of the Estate of E. V. Richard, deceased, and one-fourth (¼) to Louise Crimmins, individually and as independent executrix of the Estate of F. E. Crimmins, deceased, as further consideration for this agreement:

'(a) An overriding royalty of three-sixteenths (³⁄₁₆) of all the oil produced and saved from the leased premises on all flowing wells, and an overriding royalty of one-sixteenth (¹⁄₁₆) on all oil produced and saved from the leased premises on all pumping wells;

"(b) An overriding royalty of three-sixteenths (³⁄₁₆) on all gas and other minerals which may be produced and saved by grantee, its successors and assigns, from the lands affected hereby under and by virtue of the lease above mentioned; ·

"(c) An overriding royalty on sulphur equal to seventy-five cents (75¢) per long ton of 2,240 pounds on all sulphur mined

and marketed from said premises; delivery of such oil and/or gas is to be made free of cost to the credit of assignors into the pipe line to which the well or wells on said premises may be connected; on dry gas or casinghead gas, when marketed from said premises, assignors shall be paid in the proportion above stated, three-sixteenths (³⁄₁₆) of net proceeds at the well derived therefrom; and on casinghead gas or other gaseous or vaporous substances produced from said premises, and utilized by grantee, its successors and assigns, in the manufacture of gasoline, assignor shall be paid, in the proportions above stated, three-sixteenths (³⁄₁₆) of the current market value at the wells of the casinghead gas or other gaseous or vaporous substances so utilized and assignee shall not be required to make settlement with assignors therefor until assignors shall have executed and delivered to assignee the form of casinghead gas division order then in use by assignee covering the casinghead gas so utilized * * *".

The most material portions of the appealed-from judgment, after decreeing that both sides alike had sought a declaratory-judgment as to their respective rights under the quoted terms of the assignment, and that the matters in controversy "involved the question of the amount of overriding-royalties on oil produced and saved from two wells, which were the only wells that had been drilled on the property involved; and only the question of said royalty on oil, the royalties provided for in said assignment on gas and sulphur and other minerals not being in dispute", were as follows:

"It appears to the Court that said wells are being produced, and have been during the period for which monies have been impounded by said purchasers of the oil, by a process called in the evidence by some of the parties 'pumping', and by some of the parties 'gas-lift operations'. That the term 'flowing well', as used in said assignment, means and was intended to mean by the parties to said assignment a well that is caused to produce oil by its own reservoir-pressure, and that the term 'pumping well' was intended to mean and does mean between the parties to this suit any well which is not

a flowing well and from which oil is produced by the use of artificial lifting-methods, such as include the devices and operations now in use in producing said wells, but not limited to the pumping, or gas-lift method, now in use in said wells.

"The court is of the opinion and so finds that said Joe L. Ferguson, Louise C. Landry, and Mrs. Beulah Brigham, are not entitled to the overriding royalty on oil of three-sixteenths (3/16) of all the oil produced and saved from the leased premises on flowing wells, as said wells are not flowing-wells, but that they are entitled to have and receive the smaller royalty provided in said assignment of one-sixteenth (1/16th) of all oil produced and saved from the leased premises on all pumping wells."

The court filed extended findings of both fact and law, in support of its decree.

In this court the appellant presents 4 points-of-error, to the effect that the court erred in these respects: (1) in failing to apply the technical meaning of the term "pumping wells", as that term is used in the oil industry; (2) in not placing the burden on appellees to establish the occurrence of the condition subsequent or limitation event; (3) in not enforcing the practical construction placed on the overriding royalty-clause by all the parties; and (4) in refusing to reform the assignment.

None of these presentments, it is concluded, point out reversible error. As the review of the judgment has shown, the controlling question tendered alike by both sides to the court was the construction of the quoted reservations in the contract-of-assignment, and each sought a declaratory-judgment fixing the overriding royalty at what it contended for, the appellant and his co-assignor, Mrs. Beulah Brigham, insisting that they were entitled jointly to 3/16 of such royalty on oil produced from the two wells involved; whereas, the appellees contended that they were only entitled to a 1/16. The court rendered the declaratory-judgment coveted by both sides, but it was in favor of the appellees and against the appellant, fixing his interest at 1/16.

The court, both as a matter-of-law, as well as of fact, found that the two wells were no longer flowing-wells, within the meaning of the contract reservations.

That concluded the matter under the authorities: 17 C.J.S., Contracts, § 325, p. 763; Remington Rand v. Sugarland Industries, 137 Tex. 409, 153 S.W.2d 477; Richardson v. Hart, 143 Tex. 392, 185 S.W.2d 563; 12 Am.Jur., page 249.

This court agrees fully with the trial court's construction of the contract; that is, upon its face, it was not ambiguous, but, to the contrary, plainly provided that the 3/16 royalty the appellant contended for was only applicable to flowing-wells; whereas, it appears from this record-irrespective of the trial court's specific findings of both fact and law to that effect—that these two wells were not any longer, and had not been for some considerable time, flowing wells, but that they could only be made to produce by the application of some extraneous aids to production.

This condition, under the authorities, plainly classified them as pumping wells. Magnolia Petroleum Co. v. Connellee et al., Tex.Com.App., 11 S.W.2d 158; Collier et al. v. Caraway et al., Tex.Civ. App., 140 S.W.2d 910; 31A Tex.Jur., page 87; Rhoads Drilling Co. et al. v. Allred, 123 Tex. 229, 70 S.W.2d 576; Exum v. Laub, 5 Cir., 87 F.2d 73; 10 Tex.Jur., Sec. 172; 10 Tex.Jur., Sec. 169; 10 Tex. Jur., Sec. 170.

Wherefore, as this court views the record, the trial court's findings-of-fact, except, possibly, the one to the effect that such wells had so ceased to flow and had become pumping-wells instead, become immaterial; if, however, the question of whether the wells had in fact become pumpers, in order to induce any production therefrom, was in issue, the court's finding that they had has not been shown, on this appeal, to have been without amply sufficient evidence to support it.

Moreover, there was likewise no dearth of proof that the wells had in fact become pumping ones, within the meaning of that term as used in the oil industry.

Neither did the reservations in the assignment, upon which appellant is dependent and upon which he relies, contain

any conditions subsequent whatever; indeed, he thereby conveyed all his title to the oil and other minerals under the land, and, as to the oil, reserved the specific royalties on these particular wells; therefore, his grantees were entitled to all of the oil those wells produced, subject only to the specific royalties therein so provided for. Magnolia Petroleum Co. v. Connellee, Tex. Com.App., 11 S.W.2d 158.

It follows, also, that there was no basis left for appellant's contention that he was entitled to the ⅜₆ royalty in the production of these two wells; under the royalty provisions on other minerals, since, as indicated supra, the litigation had only to do with royalties on oil, by the acquiescence of both parties.

It follows, further, that there was no basis for a reformation of the contract so mutually made by the parties thereto and so plainly specifying all that each was to get thereunder, according to the limitations they themselves attached. Sun Oil Co. v. Bennett, 125 Tex. 540, 84 S.W.2d 447.

These conclusions require an affirmance of the judgment. It is so ordered.

Affirmed.