**UNITED AMERICAN INSURANCE COMPANY, Appellant,**

v.

**Thomas A. GRAVETT et ux., Appellees.**

**No. 3563.**

Court of Civil Appeals of Texas.

Eastland.

Oct. 14, 1960.

Rehearing Denied Nov. 11, 1960.

Harless & Bailey, Dallas, for appellant.

Ponder & Pearson, Sweetwater, for appellees.

WALTER, Justice.

Thomas A. Gravett and wife filed suit against United American Insurance Company on three insurance policies for medical and hospital expenses incurred by Mrs. Gravett. The court awarded plaintiffs a judgment for $669.52 and $500 attorney's fees. However, the court denied plaintiffs a recovery for expenses incurred for hospital confinement and other expenses incurred as a result of childbirth. Both parties have appealed from such judgment.

The Gravetts contend the court erred in refusing to render judgment for the expenses incurred as a result of childbirth. The insurance company contends the court erred in awarding judgment to the plaintiffs because all other expenses incurred by them were for dental treatment, which was expressly excluded in the policies. The insurance company also contends that $500 attorney's fee is unreasonable and excessive.

The rules of construction which we are to follow in construing the pertinent provisions of said policies have been summarized by Chief Justice Chadick in Kelley v. American Insurance Company, Tex.Civ. App., 316 S.W.2d 452, 455, affirmed Tex., 325 S.W.2d 370 as follows: "(1) An insurance policy will be construed strictly against the insurer; (2) when the terms of an insurance contract are capable of two or more constructions and under one a recovery is allowable and under the other it is denied, the construction which permits recovery will be given the policy; (3) forfeitures of insurance coverage is not favored; and (4) if a fair and reasonable

construction of an insurance contract will permit, a meaning will be given to its language that effectuates a contract of insurance rather than defeats it."

About ten days or two weeks after Mrs. Gravett had some wisdom teeth extracted, she noticed a swelling in her neck. Before this swelling was noticed, Mrs. Gravett performed her regular duties as a school teacher and had no trouble eating. Mrs. Gravett's wisdom teeth were extracted when she lived in Beaumont. After she moved to Sweetwater she contacted Dr. Sam Loeb, a medical doctor with the Sweetwater Clinic. After an examination and diagnosis, Dr. Loeb placed Mrs. Gravett in the hospital for surgical treatment. This was about six weeks after the dental work had been performed. Dr. Loeb testified that he performed three operations on Mrs. Gravett, the first on June 28th at the hospital, the second on July 14th and the third on August 5th; that infection extended into the soft tissues of Mrs. Gravett's neck below the angle of the jaw and a boil was found there in the soft tissues of the neck; that the operation was very painful and it was necessary to put the patient to sleep before making the incision; that the surgical procedure was performed on Mrs. Gravett's neck below the ear lobe; that he did not render any dental treatment for Mrs. Gravett; that the domain of a dentist involves the area of the teeth and that part of the bone in which the teeth are located and that once the infection leaves this area it is not considered a dental problem; that the operations he performed were not for a dental problem but "It was a surgical problem out of the province of the dentist."

A dentist testified that a dentist's function primarily is "associated with the teeth and their structure" and that "But the problem when I saw it was what we refer to as extra-oral. It was out of the mouth and had progressed through the plains of tissue of the face and progressed down toward and into the—what we call the anterior border or the anterior triangle of the neck."

■ We hold there is some evidence of probative value upon which the court was justified in finding the medical expenses incurred were not for dental treatment.

■ Plaintiffs' attorney testified about the work he had done on this case and that in his opinion $500 would be a reasonable fee for such services. The insurance company offered no evidence to the contrary. We hold that the court was justified in awarding said attorney's fee.

■ The insurance company agrees that the amount claimed by the Gravetts in their point would be due under the policies on their claim for benefits for hospital confinement and other expenses incurred between December 23, 1959, and December 28, 1959, as a result of childbirth if said policies had been in force at such time. Each of the policies became effective on August 19, 1958, and the initial term expired a month thereafter on September 19, 1958. Premiums for all previous terms and for the November 19th to December 19, 1959, term were paid and accepted by the insurance company. The insurance company's contention is that said policies had expired on December 19, 1959. On December 10, 1959, the insurance company wrote Mr. Gravett informing him that the company was exercising its option not to renew the policies. The policies had been in force for about sixteen months and Mrs. Gravett had been pregnant for more than eight months and, just a few days prior to her delivery, the insurance company attempted to exercise its option not to renew the policies and avoid the loss for expenses incident to childbirth.

We can see no distinction between the ultimate result and effect of exercising its option not to renew the policies and a cancellation of the policies. The provision of the policies which required same to be in force for a period of 10 months before

maternity benefits could be recovered was a part of the consideration for the Gravetts to continue making their monthly payments and, as said in Friedland v. American Bankers Insurance Co., 98 Colo. 44, 52 P.2d 660, 662, "* * * to permit the company capriciously to nullify this right which it had extended to the insured would in effect be the perpetration of a fraud upon the insured. The simple facts before us, namely, the continuous payment of premiums for nine years and three months by the insured without a breach of the contract on his part, necessitates an application of the rule laid down in 32 C.J. 1247, § 433, as follows: 'Where the privilege of cancellation is exercised under circumstances which would make it operate as a fraud on insured, it is invalid and ineffective.'" The following was quoted with approval in Treadwell v. International Travelers' Assurance Co., Tex.Civ.App., 60 S.W.2d 536, 537 (Writ Ref.): "Although a reserved right to cancel a fire policy may be exercised in case the risk is subjected to a greater danger of fire than existed when the policy was issued, provided the right is exercised in good faith, yet, if the act of cancellation will operate as a fraud upon the insured, by reason of some special emergency, such as an approaching conflagration, or a probable and threatened peril from fire which makes the liability to loss imminent, the privilege reserved to terminate the policy on notice cannot be exercised, for to admit such a right would render policies valueless."

We hold the insurance company could not exercise its option not to renew the policies because such procedure would defeat the coverage the parties contracted for and render the policies valueless.

The judgment of the trial court insofar as the Gravetts' appeal is concerned is reversed and judgment is here rendered for them for $201.58. The judgment awarding the Gravetts $669.52 and attorney's fee is affirmed.

The judgment is affirmed in part and reversed and rendered in part.