**NATIONAL SURETY CORPORATION,**
**Appellant,**

v.

**WESTERN FIRE & INDEMNITY COMPANY, Appellee.**

**No. 19973.**

United States Court of Appeals
Fifth Circuit.

May 17, 1963.

Rehearing Denied July 22, 1963.

S. Tom Morris, Amarillo, Tex., Gibson, Ochsner, Harlan, Kinney & Morris, Amarillo, Tex., of counsel, for appellant.

Charles B. Jones, Lubbock, Tex., Evans, Pharr, Trout & Jones, Lubbock, Tex., for appellee.

Before PHILLIPS,[*] CAMERON and WISDOM, Circuit Judges.

PHILLIPS, Circuit Judge.

This is an action to determine the respective liability of National Surety Corporation,[1] and Western Fire & Indemnity Company,[2] under their respective policies of liability insurance, issued to W. E. Bryan and C. L. Hoffman, doing business as Bryan & Hoffman, Contractors,[3] for an amount paid under a compromise settlement of an action on a claim for personal injuries, by one Tyler against Bryan & Hoffman, arising out of a collision between an automobile driven by Tyler and a water truck driven by one Cooper, acting as an employee of Bryan & Hoffman, on a road construction contract being performed by them. There is no substantial dispute as to the facts.

On August 16, 1958, National issued its Combination Automobile Policy to Bryan & Hoffman. In such policy National agreed to pay under Coverage A

---

[*] Of the Tenth Circuit, sitting by designation.

[1.] Hereinafter called National.

[2.] Hereinafter called Western.

[3.] Hereinafter called Bryan & Hoffman.

in Paragraph I of the Insuring Agreements:

"* * * on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of bodily injury, * * sustained by any person, caused by accident and arising out of the ownership, maintenance or use of the automobile";

and to pay under Coverage B of such Paragraph I:

"* * * on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of injury to or destruction of property, including the loss of use thereof, caused by accident and arising out of the ownership, maintenance or use of the automobile."

By Coverage D of such Paragraph I, such policy also provided comprehensive coverage for loss or damage to the automobile.

Paragraph II of the Insuring Agreements of the policy obligated National "With respect to such insurance as is afforded by this policy for bodily injury liability and for property damage liability," to "defend any suit against the insured alleging such injury, * * * or destruction and seeking damages on account thereof, even if such suit is groundless, false or fraudulent;" but reserved to National the right to "make such investigation, negotiation and settlement of any claim or suit as it" deemed "expedient."

Paragraph III of the Insuring Agreements of the policy defines the term "insured" and in part reads:

"With respect to the insurance for bodily injury liability and for property damage liability the unqualified word 'insured' includes the named insured * * * and also includes any person while using the automobile * * * provided the actual use of the automobile is by the named insured * * * or with the permission of" the named insured.

A "Hired Automobiles" endorsement was attached to National's policy. It provided that the insurance afforded by the policy for bodily injury liability and property damage liability applied with respect to hired automobiles; that the definition of "insured" in the policy applied to the insurance afforded under such endorsement, except to the owner or lessee, other than the named insured, of the hired automobile, or to any agent or employee of such owner or lessee.

The endorsement further provided that the premium basis for liability insurance on hired automobiles "is cost of hire," and defined the phrase "cost of hire" and specified the expenditures to be included in determining cost of hire.

It further provided that:

"The rates for each $100 of cost of hire shall be 5% of the applicable hired automobile rates, provided the owner of such hired automobile has purchased automobile Bodily Injury Liability and Property Damage Liability insurance covering the interest of the named insured on a direct primary basis as respects such automobile * * *."

The only provision in the National policy with respect to excess insurance applicable to hired automobiles is found in the "Hired Automobiles" endorsement. It reads:

"This insurance shall be excess insurance over any other valid and collectible insurance for Bodily Injury Liability for Property Damage Liability * * *."

On October 16, 1958, Western issued its Comprehensive General-Liability Policy to Bryan & Hoffman. By the terms thereof, Western agreed in Coverage A, Paragraph I of the Insuring Agreements:

"To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of bodily injury,

\* \* \* sustained by any person and caused by accident."

And in Coverage C of such Paragraph I it agreed:

"To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of injury to or destruction of property, including the loss of use thereof, caused by accident."

By Paragraph II of such Insuring Agreements, Western agreed "With respect to such insurance as is afforded by this policy," to "defend any suit against the insured alleging such injury, \* \* \* or destruction and seeking damages on account thereof, even if such suit is groundless, false or fraudulent;" but reserved its right to make "such investigation, negotiation and settlement of any claim or suit as it" deemed "expedient."

Paragraph III of such Insuring Agreements defines the term "insured" in part as follows:

"The unqualified word 'insured' includes the named insured and also includes (1) under coverages A and C, except with respect to the ownership, maintenance or use of automobiles while away from premises owned, rented or controlled by the named insured or the ways immediately adjoining, any executive officer, \* \* \* thereof while acting within the scope of his duties as such \* \* \* and if the named insured is a partnership, the unqualified word 'insured' also includes any partner therein but only with respect to his liability as such, and (2) under coverages A \* \* \* any person while using an owned automobile or a hired automobile and any person \* \* \* legally responsible for the use thereof, provided the actual use of the automobile is by the named insured or with his permission \* \* \*."

Paragraph III further provided that:

"The insurance with respect to any person or organization other than the named insured does not apply under division (2) of this insuring agreement:

"(a) with respect to an automobile while used with any trailer owned or hired by the insured and not covered by like insurance in the company; or with respect to a trailer while used with any automobile owned or hired by the insured and not covered by like insurance in the company."

The truck involved in the accident was not covered by like insurance in the company (Western).

Western's policy provided generally that if the insured had other insurance against a loss covered by "this policy," it should not be liable for a greater proportion of such loss than the applicable limit of liability stated in the Declarations bore to the total applicable limit of liability of all valid and collectible insurance against such loss. It attached to such prorating provision a proviso, reading:

"\* \* \* provided, however, the insurance under this policy with respect to loss arising out of the maintenance or use of any hired automobile insured on a cost of hire basis or the use of any non-owned automobile shall be excess insurance over any other valid and collectible insurance."

The premium clause in Western's policy clearly shows that "cost of hire" was one basis that might be used in computing the premium for coverage on hired automobiles. Indeed, the policy defines the words "cost of hire," "when used as a premium basis." But the liability schedule plainly shows that the cost of hire basis was not used and that the premium basis used was the same for the coverage on both owned and hired automobiles.

The limitation on coverage for bodily injury liability in Western's policy was $100,000 for each person and $100,000 for each accident, and in National's policy it was $50,000 for each person and $100,000 for each accident.

A printed form was used in preparing Western's policy and the greater portion

of such policy was printed. The entire provision for prorating Western's insurance liability with other insurance covering the same loss, the excess insurance proviso attached to the prorating provision, and the definition of the words "cost of hire," "when used as a premium basis," in such policy, were printed.

Tyler brought an action against Bryan & Hoffman and Cooper in the District Court of Hockley County, Texas, to recover damages for personal injuries resulting from such accident. Bryan & Hoffman made demand upon National and Western to defend the action. Western denied coverage and refused to defend. National undertook the defense of the action and filed answers in behalf of Bryan & Hoffman and Cooper. Thereafter, on October 12, 1959, Tyler dismissed the action as to Cooper.

On November 30, 1959, Bryan & Hoffman, National and Western entered into an agreement with respect to the Tyler claim and action. It recited the issuance of the liability policies, the demand by Bryan & Hoffman on National and Western to defend the action, the existence of bona fide questions between the parties to the agreement "as to the respective rights and obligations of the parties with respect to" the "claim" under the "policies."

It provided that Western and National would jointly defend the action in behalf of Bryan & Hoffman and jointly pay the expense of such defense; that Western and National would "jointly and equally pay any settlement" that might be "mutually agreed upon and approved by the parties hereto up to a maximum of $50,-000"; and that in the event the suit should be tried and final judgment rendered against Bryan & Hoffman, then Western and National would jointly and equally pay such judgment, up to a maximum of $50,000.

The agreement further provided:

"4. Each of the parties hereto expressly reserves any and all rights and defenses which it may have with respect to said accident, claim, suit and policies, and neither the execution of this instrument nor any action taken heretofore in the premises nor any action which may be taken hereafter shall constitute or be construed as a waiver of any rights of defenses of any of the parties hereto.

"5. The failure of any party hereto to assert in said suit any claim or cause of action which it has or might have against any of the parties hereto, any of the parties to said suit or any person who might properly be made a party to said suit shall not constitute a waiver of such claim or cause of action, it being the intention of the parties hereto that any and all such claims or causes of action are reserved and may be subsequently asserted.

"6. Without limitation of any of the foregoing agreements or provisions it is the intention of the parties hereto to join hands in the defense of the above claim asserted by Clinton Tyler and to reserve for future determination the respective rights and liabilities of the parties hereto as between themselves."

Pursuant to such agreement, Tyler's action and claim was compromised for $30,000 and in conformity with a release of his claim, executed by Tyler to Bryan & Hoffman and Cooper, and a consent judgment approved and entered in such action by the state court, such amount was paid into the registry of the state court jointly and equally by Western and National.

Thereafter, Western filed suit against National in the District Court of Lubbock County, Texas, to recover the $15,-000 paid by it. National duly removed the cause to the United States District Court for the Northern District of Texas and filed an answer denying Western's right to recover and a counterclaim seeking to recover from Western the $15,000 and certain expenses paid by it.

Western asserted that National's coverage of the water truck driven by Cooper and involved in the accident, which

was a hired automobile, was primary, and its coverage thereof excess; and that it was also entitled to recover as the subrogee of Bryan & Hoffman on a claim over by it against Cooper and against National, as Cooper's insurer.

National asserted that Bryan & Hoffman was not liable to Tyler by reason of Tyler's contributory negligence and therefore the equal payments made by National and Western were voluntary and neither could recover from the other; and in the alternative that Western's coverage of the hired automobile was primary and National's excess and that National was entitled to recover the $15,000 paid by it from Western.

From evidence adduced at the trial of the instant action, the trial court found that Cooper failed to keep a proper lookout and that such failure was negligence and one of the proximate causes of the collision; that Tyler was driving at an excessive rate of speed and failed to keep a proper lookout and that such acts were negligence and each was a proximate cause of the collision; and that there was no proof of any act of negligence on the part of Bryan & Hoffman, other than the negligence of Cooper. The trial court concluded, in effect, as a matter of law that Tyler was guilty of negligence, which barred him from recovery.

The trial court held against National on both of its contentions and that National's coverage was primary and Western's excess, up to $50,000, and that Western was entitled to recover from National $15,000, less $504.82, one-half of the expenses of defending the state court action, which the parties agreed to share. From a judgment entered accordingly, National has appealed.

## I

### Voluntary Payment

Counsel have not cited and we have not found any cases directly in point, under the facts and circumstances here presented, on the question of whether the payment of the $30,000 in equal amounts by Western and National was voluntary, because Tyler was barred from recovery against Bryan & Hoffman by his contributory negligence. Therefore, we must endeavor to ascertain, with little help from adjudicated cases, the intent of National and Western, under the agreement of November 30, 1959, with respect to the effect of the compromise settlement, the consent judgment and the payment of the $30,000 in equal amounts by Western and National, from the language of the agreement and the surrounding facts and circumstances.[4]

Undoubtedly, both National and Western, acting in good faith, were of the opinion that it would be wise and prudent to compromise Tyler's claim for $30,000, rather than to take the risk that contesting Tyler's action would result in a much larger jury verdict for Tyler.

There was no question that Cooper had been guilty of actionable negligence and that Tyler had suffered serious personal injuries. The sole defense was contributory negligence. The problem confronting National and Western was to determine whether they should compromise the claim or contest Tyler's action and risk failure to win on the defense of contributory negligence. The fact that the trial court in the instant case found that Tyler was guilty of contributory negligence did not establish that a jury would have so found in a trial of Tyler's action in the state court. Indeed, National and Western, acting with the advice of competent and experienced counsel, concluded it would be prudent to pay $30,000 as a compromise, rather than run the risk that a state court jury would not find Tyler was guilty of contributory negligence. We are of the opinion that in that posture of the case, the payment of $30,000 by National and Western was not voluntary, but impelled by their good faith belief that they should not risk the danger of a much greater recovery by Tyler by contesting his action to final judgment.

4. Exum v. Laub, 5 Cir., 87 F.2d 73, 74; New York Casualty Co. v. Sinclair Refining Co., 10 Cir., 108 F.2d 65, 69.

■ We conclude that under such agreement it was the intent of National and Western that the liability of Cooper to Tyler for $30,000 should be taken as established for the purpose of thereafter determining as between themselves the extent of the obligation of each under its respective policy to discharge such liability and the right of each to recover from the other any amount of such $30,000 paid by it, which the other under its policy should have paid.

## II

### Excess Coverage

It will be observed that while Western's policy is basically a policy covering general liability other than automobiles and afforded only limited coverage of liability as to owned or hired automobiles, restricted both as to persons insured and the area of maintenance or use 'of the automobile, National's policy, on the other hand, is a combined automobile policy and with respect to liability insurance is specifically directed to the providing of broad coverage as to automobiles, both owned and hired.

■ Words which admit either of a more extensive or a more restrictive signification must be taken in that sense which will best effectuate what it is reasonable to suppose was the real intention of the parties.[5]

■ The language of a contract will be given a reasonable construction, if possible, rather than an unreasonable one.[6]

■ Where a contract is susceptible of two constructions, that one will be preferred that is rational, reasonable and probable and will result in a contract in terms prudent men would naturally make.[7]

■ It is well known that insurance contracts are written by the insurer; that printed forms are ordinarily used, which are adapted to a particular insurance contract by appropriate entries in blank spaces in the printed forms and by attaching appropriate riders or endorsements; and that provisions in the printed form may be made inapplicable and surplusage by the entries in the blank spaces or by attached riders or endorsements.

■ Because insurance contracts are written by the insurer and the insured has little, if any, part in the selection of the language employed, ambiguous provisions in insurance contracts are construed strictly against the insurer and liberally in favor of the insured.[8]

In the light of the rules of construction above stated, we shall first undertake to ascertain the intent of the parties, with respect to excess insurance under the provisions of Western's policy.

It will be observed that under the provisions of Western's policy, ordinarily, if the insured has other valid and collectible insurance against a loss covered by the policy, the insurance liability under the policy shall be prorated with such other insurance liability on the stated basis. In other words, under such policy, the basis normally and usually to be applied in determining the liability for a loss thereunder, where there is other insurance covering such loss, is an ap-

5. Church v. Hubbart, 2 Cranch 187, 6 U.S. 187, 233; Exum v. Laub, 5 Cir., 87 F.2d 73, 74.

6. City of Orlando v. Murphy, 5 Cir., 84 F.2d 531, 534, c.d. 299 U.S. 580, 57 S.Ct. 45, 81 L.Ed. 427; Hicks v. Smith, Tex. Civ.App., 330 S.W.2d 641, 646; Christie, Mitchell & Mitchell Co. v. Selz, Tex.Civ. App., 313 S.W.2d 352, 354; Green Avenue Apartments v. Chambers, Tex.Civ. App., 239 S.W.2d 675, 685.

7. Champlin v. Commissioner of Internal Revenue, 10 Cir., 71 F.2d 23, 28.

8. Shaw v. United States Fidelity & Guaranty Co., 3 Cir., 101 F.2d 92, 100; Southwestern Fire and Casualty Company v. Atkins, Tex.Civ.App., 346 S.W.2d 892, 894; United American Insurance Company v. Gravett, Tex.Civ.App., 339 S.W. 2d 682; Jones v. Mutual Liability Insurance Co. of Wisc., Tex.Civ.App., 336 S.W.2d 905, 907; Fidelity-Phenix Fire Insurance Co. v. Farm Air Service, 5 Cir., 255 F.2d 658, 661.

plication of the prorating provisions and not the excess insurance provisions.

■ The phrase "insured on a cost of hire basis" in the excess insurance proviso in Western's policy may reasonably be interpreted to mean insured by Western on such a basis. For such excess insurance provision to have any application in the instant case, it would have to be broadly construed to mean insured either by Western or any other insurer.

■ The fact that if it is construed to mean insured by Western, the excess provision performs no function in Western's policy in the instant case, is of no moment. Many times, printed provisions in an insurance contract, which would have been applicable under a possible premium basis, had it been used, but which was not used, or under insurance coverage includable under the form, had it been provided, but which was not provided, perform no function and are surplusage in the contract. That is true of provisions of Western's policy, other than the excess insurance provision.

To provide that liability insurance for loss resulting from the maintenance or use of a hired automobile should be excess insurance over other insurance for such loss, but that insurance for loss resulting from the ownership, maintenance or use of an owned automobile should be primary and subject to proration with other insurance for such loss, when the basis for the premium charged is identical with the respect both to the coverage of hired and owned automobiles, is illogical and unreasonable.

■ We conclude that since the water truck, although a hired automobile, was not insured by Western on a cost of hire basis, that Western's excess insurance provision does not apply, and that its insurance is primary.

We next undertake to ascertain the intent of the parties, with respect to excess insurance coverage under the provisions of National's policy.

■ A provision of a contract, which is clear and unambiguous and not subject to more than one interpretation, is not open to construction, even if giving effect to its literal terms will work a hardship on one of the parties.[9] The rule has been applied to insurance contracts.[10]

■ The excess insurance provision in National's policy, with respect to the insurance provided by the "Hired Automobiles" endorsement, is found in such endorsement. Its language is clear and free from ambiguity. By plain and unmistakable language, it makes the insurance for bodily injury liability and property damage liability with respect to hired automobiles, provided by such endorsement, excess insurance over *"any other* valid and collectible insurance." (Italics ours.)

Had it been the intention to limit the excess provision to other liability insurance carried by the owner of the hired automobile and covering the named insured in National's policy, it would normally have been so indicated by particular language; and if the use of general, rather than particular language was preferred, the phrase "other insurance" and not the all-inclusive phrase "any other * * * insurance" would have been used. We know of no language that could have been used to better indicate a plain intent to embrace, without limitation, all valid and collectible insurance against liability for personal injury and property damage with respect to hired automobiles than the phrase "any other valid and collectible insurance."

■ We conclude that National's insurance on hired automobiles was excess

9. Bull S.S. Lines v. Thompson, 5 Cir., 123 F.2d 943, 944, c.d. 315 U.S. 816, 62 S.Ct. 805, 86 L.Ed. 1214; Coleman v. Kettering, Tex.Civ.App., 289 S.W.2d 953, 956; Wood Motor Co. v. Nebel, 150 Tex. 86, 238 S.W.2d 181, 185.

10. Rains v. National Life & Accident Ins. Co., 5 Cir., 62 F.2d 341, 343; General American Indemnity Company v. Pepper, 161 Tex. 263, 339 S.W.2d 660, 661; American Standard Life Insurance Co. v. Redford, Tex.Civ.App., 337 S.W.2d 230, 231.

over the amount of Western's primary coverage thereon.

### III

### Western's Subrogation Claim

Below and in this court, Western asserted as an additional ground for recovery, that since Bryan & Hoffman were liable solely because of Cooper's negligence, Bryan & Hoffman were entitled to recover over against Cooper and against National, as Cooper's insurer; and since Cooper was not an insured under Western's policy, a fact we will assume but not concede, it was entitled to recover against National as the subrogee of Bryan & Hoffman.

 Bryan & Hoffman could not recover against Cooper, unless the latter was liable to Tyler. Cooper was not a party to the state court action when the consent judgment was entered therein, and was not bound by that judgment. There never has been an adjudication binding on Cooper that he was liable to Tyler. Indeed, the trial court in the instant case held he was not liable. Unless and until it has been adjudged that Cooper was liable to Tyler, there can be no basis for a recovery by Bryan & Hoffman against Cooper or National, as Cooper's insurer. Hence, no right has been established to which Western could be subrogated. A subrogee's rights are not greater than those of his subrogor.[11]

It is true that we hold that it was the intent of National and Western that the liability of Cooper to Tyler for $30,000 should be taken as established for the purpose of thereafter determining, as between themselves, the extent of the obligation of each, under its respective policy, to discharge such liability and the right of each to recover from the other any amount of such $30,000 paid by it, which the other, under its policy, should have paid. However, we do not hold that such liability should be taken as established, other than for the purpose of

determining the respective liability of National and Western to its insured under its policy. We do not think the parties intended to open the door to a contention based upon a premise wholly collateral to their respective obligations to their insureds under their policies, such as Western's claim as subrogee.

We conclude, as did the trial court, that Western's subrogation claim was not well grounded.

The judgment is reversed and the cause is remanded with instructions to enter a judgment in favor of National for $15,504.82.

11. United States F. & G. Co. v. First Nat. Bank in Dallas, 5 Cir., 172 F.2d 258, 262; United States v. United Services Automobile Ass'n, 8 Cir., 238 F.2d 364, 366.