## RANKIN et al. v. RHEA et al.

(Court of Civil Appeals of Texas. Amarillo.
Feb. 21, 1914. Rehearing Denied
March 21, 1914.)

1. CONTRACTS (§ 147*) — CONSTRUCTION — IN-
TENT.

The governing principle in the construc-
tion of contracts is the intention of the parties.

[Ed. Note.—For other cases, see Contracts,
Cent. Dig. §§ 730, 743; Dec. Dig. § 147.*]

2. CONTRACTS (§ 164*)—CONSTRUCTION—CON-
TEMPORANEOUS WRITINGS.

Contemporaneous instruments relating to
the same subject-matter may be read together
as forming parts of one transaction.

[Ed. Note.—For other cases, see Contracts,
Cent. Dig. §§ 746–748; Dec. Dig. § 164.*]

3. CONTRACTS (§ 147*)—CONSTRUCTION AS A
WHOLE.

It is a canon of construction of contracts
that the particular words may not be isolatedly
considered, but the whole contract must be in-
terpreted with reference to the nature of the
obligation between the parties.

[Ed. Note.—For other cases, see Contracts,
Cent. Dig. §§ 730, 743; Dec. Dig. § 147.*]

4. CONTRACTS (§ 152*) — ENFORCEABLE AS
WRITTEN.

It is the duty of courts to enforce contracts
as the parties have made them, notwithstanding
a hardship may be worked.

[Ed. Note.—For other cases, see Contracts,
Cent. Dig. §§ 732, 733, 738; Dec. Dig. § 152.*]

5. CONTRACTS (§ 154*)—CONSTRUCTION.

Where an instrument is susceptible of two
constructions, the one working no injustice
should be adopted.

[Ed. Note.—For other cases, see Contracts,
Cent. Dig. § 735; Dec. Dig. § 154.*]

6. CONTRACTS (§ 175*)—CONSTRUCTION — EVI-
DENCE TO AID.

A chancery court will always refer a trans-
action to that construction, predicable upon
the evidence, where there is serious doubt as
to what the parties intended, which will lead
to the more just results.

[Ed. Note.—For other cases, see Contracts,
Cent. Dig. §§ 766, 978, 1010, 1067–1069, 1786,
1803, 1810; Dec. Dig. § 175.*]

7. SALES (§ 85*)—CONSTRUCTION—INDEPEND-
ENT STIPULATION.

The owner of a well drilling equipment con-
tracted with a town-site company to drill wells
for it to an amount of $600, $200 of which was
to pay for the purchase of a unit in the town-site
distribution. The owner sold the equipment
and the contract, in consideration of a note
with a specified maturity date for $600, se-
cured by a chattel mortgage. A separate agree-
ment was executed, reciting that payments re-
ceived by the buyer under the contract were
to be applied on the note and the seller would
furnish the drilling in order to be entitled to
the payments of the note. The town-site com-
pany furnished no drilling. *Held,* that the
agreement to furnish the drilling could not be
treated as a condition of liability on the note,
in view of the fact that a chattel mortgage was
given, the note bore a specified maturity date,
and under the contract for drilling only $400
could be applied in payment of the note as the
balance was to go in payment of a unit.

[Ed. Note.—For other cases, see Sales, Cent.
Dig. §§ 236–238; Dec. Dig. § 85.*]

Appeal from Scurry County Court; Arthur
Yonge, Judge.

Action by W. T. Rankin and another
against O. M. Rhea and another. From a
judgment for defendants, plaintiffs appeal.
Reversed and remanded.

Perkins & Perkins, of Snyder, for appel-
lants. Higgins & Hamilton, of Snyder, for
appellees.

HENDRICKS, J. The appellants, W. T.
Rankin and J. C. McDermott, sued O. M.
Rhea and J. T. Caddell, the appellees, on a
promissory note, executed by the latter to
the former, for the sum of $500, dated Oc-
tober 3, 1911, and due "on or before" Au-
gust 1, 1912, bearing interest from date at
the rate of 10 per cent., and providing for
the usual attorney's fees, which note was
secured by a chattel mortgage on a well
drill and equipment, the note bearing credits
made at different dates, amounting to the
sum of $179. The defendant Caddell an-
swered that thereafter he sold his interest
in said well drill and equipment to the ap-
pellee Rhea, and the latter had assumed
payment of the same, and that the appellants
agreed to release him from liability on the
note.

In this discussion the name of Rankin will
be used for both appellants, and that of
Rhea for both appellees, as to the issues ap-
plicable to each instead of the plural.

The facts develop that Rhea had sold to
Rankin the well drill equipment some time
previous to the resale from Rankin back
to Rhea, Rankin executing his note for the
sum of $600 which had been reduced by the
payments to $539 previous to said resale.
The evidence also suggests that, immediate-
ly prior to the resale by Rankin to Rhea of
the particular machinery, the note executed
by the former in favor of the latter, and
which had been reduced by payments to the
sum of $539, was past due, and that Rhea
was in urgent need of the same; it also sug-
gests that during this time there were some
preliminary negotiations for the resale at
an estimated price of $500, and upon the
basis that the note owing by Rankin to
Rhea was of that amount. Prior to the re-
sale of this property Rankin had entered in-
to an agreement with the Dermott Town-Site
Company, by the terms of which the Town-
Site Company agreed to employ him to dig
wells on its property, upon a graduated scale
of prices per foot in accordance with the
depth, to the amount of $600, Rankin agree-
ing that $200 of said amount should be "ap-
plied to the purchase of a unit in the Der-
mott town-site distribution," and as the work
progressed one-third of the installments due
under the contract should be paid for said
unit. When Rankin resold to Rhea and re-
ceived the note and mortgage in considera-
tion, or as part of the consideration, he
transferred to the said Rhea his well drilling
contract with the Dermott Town-Site Com-
pany, and as part of this transaction the

following agreement was executed between the parties and relied upon by the appellees (the defendants in the court below) as a defense to their alleged liability on the note, and for the purpose of invoking a cancellation of same, asserting a noncompliance of said contract by appellants:

"This memorandum witnesseth that W. T. Rankin and J. C. McDermott have this day transferred to O. M. Rhea and J. T. Caddell that certain contract with the Town-Site Company, wherein the said Rankin and Mc-Dermott have an agreement with the said Town-Site Company to do $600 worth of drilling. It being understood that the said Rhea and Caddell are to do and perform the said work of drilling in a workmanlike manner and upon the terms that have been agreed upon by said Rankin and McDermott and the said Town-Site Company as is shown and set forth in the written contract between the said parties for said drilling. The consideration for the transfer of said drilling contract to said Rhea and Caddell is that the said Rhea and Caddell shall do the work as promptly as is convenient and shall apply all the proceeds from said drilling contract to the payment of the note of $500.00 this day executed in favor of W. T. Rankin and J. C. McDermott in payment for one well drilling machine this day conveyed to the said O. M. Rhea. It is understood that the said Rankin and McDermott have now performed $49.00 worth of said above-mentioned work.

"It is also understood that the said Rankin and McDermott shall furnish said amount of drilling as herein mentioned in order to be entitled to the payments as herein set forth."

The last clause of this contract is the "bone of contention" in this case; appellees asserting, "that the appellants had to furnish the amount of drilling provided for in the contract in order to be entitled to the payment of the note"; the appellants contending that "the only effect of the portion of the contract above quoted [the last paragraph] is to give the appellants a right to demand the application of the proceeds from the digging of the wells by appellees for the Dermott Town-Site Company, in the event that the plaintiffs furnish the drilling, * * * and to give the contract any other construction would vitiate the maturity of the note and render the contract contradictory to the note and the note contradictory to the contract." We also infer that appellants contend that their right to the application of payments is in the nature of additional security, and that the provision referred to in construing the contract, in the event they failed to furnish the drilling under their contract with the Town-Site Company, which had been assigned to the appellees, they could not demand the application of the proceeds, but must rely on the other security, and must wait until the first of August, 1912, for the payment of the note, which construction they contend is emphasized by the recitation "on or before August 1, 1912."

The appellees in asserting "that the owners of the note shall not be permitted to collect it unless they furnish the work with which to pay for it" particularly cite the case of Kelly v. Webb, 27 Tex. 369, which involved a written obligation of one party to pay another "five hundred bushels of corn in the heap," for which the other party, in a separate obligation, agreed to pay the promisor of the corn the sum of $250, the court necessarily holding that neither party "was entitled to enforce from the other a fulfillment of the contract without at the same time performing its stipulations on his part"; the appellees evidently contending that the promise to pay the note in this case, in connection with the last paragraph in the contract quoted, were concurrent and dependent clauses and conditions, and as the evidence in this cause conclusively showed that Rankin or the Dermott Town-Site Company failed to furnish the amount of drilling mentioned in the drilling contract, and that as the note was payable primarily out of payments for the drilling to be so furnished, the liability did not exist, and as the jury found in this case that the well drilling contract is valueless the note and mortgage should be canceled; evidently the trial court proceeded upon this theory in the cancellation of the note and mortgage, which we think is manifestly erroneous. Of course Rankin did not agree to furnish the amount of well drilling indicated in the well drilling contract in the sense that he had any dominion or control over the property of the Dermott Town-Site Company, and, if the contract meant anything for the benefit of Rhea, it could only mean, from the situation of the parties indicated by the record, that Rankin would guarantee to Rhea that the Dermott Town-Site Company would furnish said amount of drilling, as mentioned in said well drilling contract, in order to entitle him to the payments accruing as the work progressed for the purpose of applying the same upon the note. In other words, the manner in which we consider the cause, the only contention which Rhea could insist upon is that Rankin stipulated that the Dermott Town-Site Company should perform its contract to the extent of furnishing the $600 of well drilling, as called for therein, and at best he could only abate the note to the amount of $400, excluding the unit. The first assignment of error is not a sufficient repetition and reproduction of the assignment in the motion for new trial, and is not considered, but the second assignment, practically raising the same question, is not objected to and is regarded.

[1] The governing principle in the construction of all contracts is, of course, the intention of the parties.

[2, 3] It is a well-known principle that contemporaneous instruments relating to the

same subject-matter may be read together as forming parts of one transaction; and an "elementary canon of interpretation is, not that the particular words may be isolately considered, but that the whole contract must be brought into view and interpreted with reference to the nature of the obligations between the parties and the intentions which they have manifested in forming them." Enc. of U. S. Sup. Rep. vol. 4, pp. 573–574. The numerous cases of the Supreme Court of the United States noted by the author in the enunciation of the quoted rule were not searched by us, as the rule is fundamental, but it is so aptly framed as deserving quotation.

[4, 5] It is of course true that when parties have made their contract it is the duty of the courts to enforce it as they have elected to make it, without regard to the fact that, in the light of subsequent events, a hardship may be worked; but it is also true "that, when an instrument is susceptible of two constructions, the one working injustice and the other consistent with the right of the case, one should be favored which standeth with the right." Noonan v. Bradley, 76 U. S. (9 Wall.) 394, 19 L. Ed. 761; Paine v. Copper Bell Mining Co., 13 Ariz. 406, 114 Pac. 967; Faulk v. Dashiell, 62 Tex. 646, 50 Am. Rep. 542. We cite these decisions as authority for the rule, and not that the causes are analogous; other principles of construction along with the one quoted were applied by the courts in those cases. Mr. Page, in his work on Contracts, vol. 2, § 1121, in declaring the rule, uses this language: "As between two constructions, each probable, one of which makes the contract fair and reasonable, and the other making it unfair and unreasonable, the former should always be preferred."

[6] We have the analogy in equity, for which it is unnecessary to cite authorities, that a chancery court will always refer a transaction to that construction, predicable upon the evidence, where there is serious doubt as to what the parties intended, which will tend to the more just results, instead of to unconscionable ends—the former will always be adopted.

[7] Bearing these rules of construction in mind, was it the intention of these parties that Rankin was to guarantee that the Dermott Town-Site Company would fulfill its contract in providing $600 worth of drilling, and that Rankin should suffer for the breach? Here we have a note executed October 3, 1911, payable on or before August 1, 1912, given for the purchase price, or at least representing the greater part of the consideration, for the well drill and gasoline engine, etc., and a chattel mortgage, executed at the same time on different property, to secure the payment of the note. It is of course evident that Rankin desired to sell his well drill, and also to get rid of his contract with the Town-Site Company, but it is also concluded that Rhea, quoting a special finding of the jury, "bought the well drill in order to procure the contract." The mortgage provides that in the event of seizure of the mortgaged property by judicial process, or of the sale of the same by the mortgagors, or its removal from the county, the mortgagee may declare the note matured. If the maturity of the note is subject to Rankin, or the Town-Site Company, furnishing the $600 of drilling, this provision of the mortgage is nullified, and the interpretation given to the contract by Rhea is inconsistent with the same. The answer cannot be made that, of course, if the contract is breached in the manner mentioned, Rhea could not complain and take advantage of his own breach, for the reply would be that the maturity of the note, according to contract, has not occurred, for its due date is suspended, and the note is not to mature and become a valid obligation until the work is furnished, and that is the real due date, as much so as if it were expressly stipulated in the contract. The contract does say that Rankin shall furnish the work in order to be entitled to the payments, but we are unable to read into it as a forfeiture that if the Dermott Town-Site Company failed to furnish the work in accordance with its contract, the note is an invalid obligation.

It could not be said that if the Dermott Town-Site Company had furnished the drilling, but refused to pay for the same, it would be implied from the contract that Rankin, in that event, would have to make good; as a guaranty contract it could not be extended that far—the rule of strictissimi juris would apply. We believe this contract is susceptible to the construction, in order that Rankin be entitled to the payments as set forth in the drilling contract, that the drilling must be furnished within the due date of the note, and that is as far as the agreement to furnish the same would extend; if not furnished within that time, Rankin could not demand the drilling payments as security for the purpose of paying the note. The stipulations in the note and mortgage, with the purpose of giving the lien upon the well drill and accessories, are more compatible with that construction than to destroy the note and mortgage with the other construction contended for by appellees. In the event the Dermott Town-Site Company failed to furnish any drilling, by virtue of the appellees' interpretation, the well drill and the gasoline engine would be practically a gift to Rhea, which, construing all of the provisions of the contract, we believe the courts should not tolerate, and that construction should be adopted more in consonance with equity. If Rhea abandoned his position that the promise to pay the note and the provision in question are not dependent, and that the courts at least should construe it as a guaranty that the Town-Site Company would furnish the drilling, and if it failed in that respect the guarantor is liable for the breach, and

deducting the $200 for the unit, it having been shown it would have cost $135 to do the work, that by a rule of proportion the damages could be ascertained, and to that extent he should recover as an offset. We think that position would be equally inconsistent. If the consideration to Rankin was, in order to get the payments, he guaranteed that the Town-Site Company would furnish $600 worth of drilling, the guaranty would have to operate upon and embrace the whole contract; it would not apply to a part, for the breach would be the failure to furnish the $600 worth of well drilling, and the fruits of the contract would be the measure of damages, which would comprehend the $200 unit, as well as the other elements. Surely it is not contended that in that event that the contract would mean that Rankin would have to pay for the unit?

We are not minimizing the difficulty of the interpretation of this contract, but, upon the best consideration we are able to give it, we are inclined to think that the provision in question should not be isolated and construed contrary to what otherwise appears to be the evident purpose of the transaction, and cause it to operate as a forfeiture for the destruction of the debt and the mortgage, Some of the findings of the jury were unnecessary and superfluous, but upon the findings which are in consonance with the interpretation given to the contract by this court, we believe the cause should be reversed and rendered.

The jury specifically found that the appellee Caddell was not exonerated from the note upon his plea of release, and it is the order of this court that the judgment of the trial court be vacated, and that the appellants, W. T. Rankin and J. C. McDermott, recover judgment against the appellees, O. M. Rhea and J. T. Caddell, for the sum of $427.27, together with interest thereon from the 24th day of July, A. D. 1913, at the rate of 10 per cent. per annum, and that the appellants' mortgage lien upon one Leader No. 2, well drilling machine, and upon one 6-horse power gasoline engine, together with the fixtures and attachments thereto belonging, as described in appellants' petition, be foreclosed, as said lien existed on the 3d day of October, A. D. 1911, and the same should be sold in terms of law for the purpose of paying said debt and judgment, and that appellants recover all costs in this court and in the court below.