**PENDLETON GREEN ASSOCIATES et al.,**
**Petitioners,**

v.

**ANCHOR SAVINGS BANK et al.,**
**Respondents.**

**No. 965.**

Court of Civil Appeals of Texas,
Corpus Christi.

Feb. 6, 1975 Opinion on Granting
of Temporary Injunction.

On the Merits March 13, 1975.

Gordon L. Briscoe, Harlingen, for petitioners.

James C. Abbott, Ewers, Toothaker, Abbott, Talbot, Hamilton & Jarvis, McAllen, for respondents.

On Motion for Injunction

## OPINION

PER CURIAM.

This is an original proceeding in this Court for an injunction. Pendleton Green Associates, Texas Valley Leisure Estates, Inc., and Community Projects, Inc., relators, with leave of this Court first obtained, filed an application in this Court on January 28, 1975, pursuant to Rule 383, Texas Rules of Civil Procedure, and Article 1823, Vernon's Ann.Civ.St., to enjoin Anchor Savings Bank and W. H. O'Donnell, its Substitute Trustee, respondents, from selling certain properties under the powers conferred by a deed of trust pending the disposition by this Court of the merits of an appeal from the denial of a temporary injunction by the trial court.

The trial court granted a temporary restraining order on January 6, 1975, which prohibited defendants (respondents) from conducting the trustee's sale on January 7, 1975. The application for temporary injunction was denied by the trial court by an order that was signed and rendered on January 23, 1975. Plaintiffs (relators) have appealed.

Relators seek injunctive relief in this Court on the ground that the same is necessary in order for this Court to protect its jurisdiction of their appeal from the aforesaid order of the trial court. Otherwise, according to their application, our jurisdiction would be unlawfully invaded by the destruction of the subject matter of the appeal before we have decided the issues raised in the appeal.

Relators, as plaintiffs, filed suit against respondents in the District Court of Cameron County, Texas, on January 6, 1975, wherein they alleged: 1) they were the owners of an apartment complex in Harlingen, Texas, together with certain fixtures and personal property located on the premises and used in connection therewith; 2) Anchor Savings Bank is the owner of a note which is secured by a deed of trust covering said properties; 3) at some time prior to the filing of the petition, Anchor drew $210,000.00 pursuant to a certain letter of credit and applied the same on the principal amount of the note; 4) the $210,000.00, in fact, constitutes an advance payment of several of the next succeeding monthly payments and should be applied against all monthly payments of principal, interest, insurance and taxes as the same become due until said sum has been exhausted; 5) the note was not in default when suit was filed and has never been in default; and 6) W. H. O'Donnell, Substitute Trustee, posted notice of trustee's sale for January 7, 1975, and stated in the notice that the note was in default. Relators, in addition to relief by way of temporary restraining order and temporary injunction, until a trial was had on the merits, sought a declaratory judgment respecting the proper application of the $210,000.00.

Respondents, in their answer to the petition, among other defenses, plead that relators have been delinquent in their mortgage payments since September 1, 1974 in the total sum of $80,000.00, and that they (respondents) were entitled to apply the said sum of $210,000.00 on the principal of the note.

The transcript was filed by relators in this Court on January 28, 1975. We grant-

ed an injunction on January 30, 1975 after a hearing,[1] whereby respondents were enjoined from proceeding with a trustee's sale of said properties provided that relators file in this Court (on or before February 3, 1975) a good and sufficient bond, payable to respondents, to be approved by the Clerk of this Court, conditioned that relators shall pay all damages to respondents in the event it be held that the temporary injunction was properly denied by the trial court. Such a bond was filed by Pendleton Green Associates on January 31, 1975. In addition, we advanced the case on our docket and shortened the briefing times of the parties involved.[2] See Rules 410, 411, 412 and 414, T.R.C.P.

We have the power to grant such writs, including the writ of injunction, as may be necessary to enforce or protect our jurisdiction over a pending appeal, and to preserve the subject matter of the appeal. City of Dallas v. Wright, 120 Tex. 190, 36 S.W.2d 973 (1931); Houtchens v. Mercer, 119 Tex. 244, 27 S.W.2d 795 (1930); Lee v. Lee, 355 S.W.2d 255 (Tex.Civ.App.— Houston 1962, mand. overr.). The subject matter of the pending appeal is whether the trial court properly refused to grant the requested temporary injunction. If respondents sell the subject property at a trustee's sale while the appeal is still pending in this Court, the appeal will become moot and our jurisdiction over the pending appeal will have been unlawfully invaded and its subject matter destroyed, since there would then be no way we could enforce our judgment or decree in the event the relators should prevail in their appeal. Madison v. Martinez, 42 S.W.2d 84 (Tex. Civ.App.—Dallas 1931, writ ref'd); Nelson v. Blanco Independent School District, 386 S.W.2d 636 (Tex.Civ.App.—Austin 1965, writ ref'd n. r. e.).

Relators argue that no bond should be required as a condition to the issuance of an injunction by this Court. They rely on Powell v. Farm & Home Savings Association, 509 S.W.2d 734 (Tex.Civ.App.— Fort Worth 1974, no writ), and on Dawson v. First National Bank of Troup, 417 S. W.2d 652 (Tex.Civ.App.—Tyler 1967, no writ). The applicable statute, Article 1823, V.A.C.S., itself, does not require a bond when the injunction is issued by a Court of Civil Appeals to enforce or protect its jurisdiction and to preserve the subject matter of the litigation pending appeal; however, there is nothing in the statute (or case law) that prohibits the requiring of such a bond.

In Riverdrive Mall, Inc. v. Larwin Mortgage Investors, 515 S.W.2d 2 (Tex.Civ. App.—San Antonio 1974, no writ), the Court, in requiring the filing of such a bond by relator, stated:

"We have effectively prevented respondents from exercising the right granted under the deed of trust to foreclose upon the described property after the note became delinquent. Thus, if it should be found that the trial court did not abuse its discretion in denying the temporary injunction, respondents will have been wrongfully deprived of such valuable right for a period of at least two months. We cannot conceive of any equitable reason why respondents are not entitled to be protected for such potential loss. To hold that we have no power to require a bond in such circumstances would lead to the absurd situation of the relator actually trying to persuade the trial court to deny its request for a temporary injunction and thus secure the relief in the appellate court without the penalty of a bond. . . ."

We agree with the San Antonio Court that we not only have the power to require a bond to protect the other parties from a possible loss, but also the duty to do so.

---

1. Oral announcement of our judgment granting the injunction was made on January 30, 1975, and this opinion is filed in support of same.

2. Submission of the appeal and oral argument has been set for March 6, 1975.

According to statements made by counsel for the parties during oral argument at the hearing on January 30, 1975, the properties were purchased by relators in April 1974 for approximately $2,000,000.00, and their equity therein as of September 1, 1974 after Anchor Savings Bank "drew" the $210,000.00 was in the neighborhood of $800,000.00; the balance due on the note after the monthly payment was made on August 1, 1975 was about $1,400,000.00; if the full $210,000.00 is rightfully applied to the amount of principal owing on the note following the August payment, then the principal balance due on the note as of September 1, 1975 would be reduced to about $1,200,000.00; the note was payable in monthly installments of about $16,000.00 each; ad valorem taxes for the year 1974 in the amount of some $13,000.00 would become delinquent on February 1, 1975 if not paid by that date; and, the rental income from the apartments (being paid to relators) was around $11,000.00 per month.

■ A serious dispute exists between the parties as to whether the note is actually in default. If relators are correct in their position, then the $210,000.00 will constitute a prepayment of some fourteen (14) monthly payments, computed from and after August 1, 1974. If, on the other hand, it be determined that the $210,000.00 is to be applied on the principal of the note, then the note has been in default since September 1, 1974, and the granting of the injunction by this Court will have deprived respondents of a valuable right for a period of probably three months. The respondants suggest that we require the relators to file a bond in the amount of at least $150,000.00. The relators say that a bond of $25,000.00 should be sufficient if a bond is required. We conclude that the equities of this case require that a bond be filed as a condition to the issuance of an injunction. It is the duty of this Court to require that a bond be made and filed in order that respondents may be adequately protected against substantial financial loss in the event the appealed judgment is sus-

tained. We have some discretion in determining the amount of the bond. Accordingly, we believe that a bond in the amount of $40,000.00, under the circumstances, affords respondents sufficient protection.

■ Since the relators Texas Valley Leisure Estates, Inc. and Community Projects, Inc. did not join in the execution of the bond, the order granting the injunction in their favor is hereby rescinded. The order granting the injunction in favor of the relator Pendleton Green Associates is confirmed. It is also further ordered that respondents refrain from posting any notice of trustee's sale pending final disposition of relators' appeal. Nothing done by this Court or contained in this opinion shall be taken or construed as an expression of opinion by us upon the merits of the appeal.

On the Merits

YOUNG, Justice.

This appeal resulted from the trial court's denial of appellants' application to temporarily enjoin appellees from foreclosing their first lien on Pendleton Green Apartments in Harlingen, Texas.

The facts are undisputed. Appellants obtained interim financing for the construction of the apartment complex from Rio Grande Building and Loan Association, an affiliate of appellee—Flynn Investment Company. As construction costs escalated throughout 1973, appellants determined that the project would require permanent financing in the amount of $1,400,000.

Appellants obtained permanent financing from appellee—Anchor Savings Bank by: 1) a letter of commitment, dated November 29, 1973, and amended January 4, 1974, whereby Anchor agreed to purchase a conventional first mortgage loan on the apartment complex; and 2) a purchase and sale agreement, dated March 20, 1974, whereby Anchor contracted with appellant—Texas Valley Leisure Estates, Inc. to purchase

the $1,400,000 loan from Rio Grande Building and Loan Association. The loan purchased by Anchor is evidenced by a "First Mortgage Real Estate Note" and Deed of Trust, both dated April 16, 1974.

The November 29th letter of commitment, as amended, provided that appellee —Anchor would provide $1,400,000 in funds. And, as amended, the commitment required that appellants provide Anchor with an irrevocable letter of credit in the amount of $210,000. This letter of credit was callable by Anchor in the event that a projected "rental achievement" of $251,960 per year had not been reached by November 30, 1974.

It is undisputed that the rental achievement was not realized. It is further undisputed that no installment payments on the note were made by appellants after August, 1974.

On December 2, 1974, Anchor "drew" the $210,000. Further, Anchor sought to foreclose its lien on the apartment complex due to appellants' failure to make the monthly installments required by the note. One attempted trustee's sale was precluded by the issuance of a temporary restraining order by the trial court on January 6, 1975. At a subsequent evidentiary hearing, pending a trial on the merits of appellants' declaratory judgment action against appellees, the trial court, by order of January 23rd, refused to temporarily enjoin appellees' threatened foreclosure of their lien on the apartment complex. On January 28th, appellants perfected their appeal to this Court and sought immediate injunctive relief, under Tex.Rev.Civ.Stat.Ann. art. 1823 (1964), pending our review of the trial court's denial of a temporary injunction. On January 30th, this Court enjoined appellees from foreclosing their lien upon the apartment complex pending our review.

The primary issue before this Court is: Has appellant shown a probable right to require that the proceeds of the $210,000 letter of credit be applied to the mortgage installment payments? Transport Co. of Texas v. Robertson Transports, Inc., 152 Tex. 551, 261 S.W.2d 549 (1953).

Appellees contend that the November 29, 1973, letter of commitment, as amended January 4, 1974; the purchase and sale agreement of March 20, 1974; the note payable to Flynn; and the deed of trust securing the note all must be read together as one contract. When all of these documents are read as one, appellees assert that the documents clearly express the intent of the parties that the $210,000 fund is applicable only to reduce the principal amount of the note.

Appellants assert that the letter of commitment of November 29, 1973, as amended January 4, 1974, and the proposed amendments to such commitment letter which Texas Valley submitted to Anchor (DX–2) were inadmissible on the ground that they contradicted the "no pre-payment" clause in the note and thus violated the parol evidence rule. We disagree.

■ As noted in Texas State Bank of Austin v. Sharp, 506 S.W.2d 761 (Tex. Civ.App.—Austin 1974, writ ref'd n. r. e.), "It is settled in Texas that where two or more instruments, executed contemporaneously *or at different times,* pertain to the same transaction, the instruments will be read together *even though they do not expressly refer to each other."* (emphasis added). See also Board of Insurance Commissioners v. Great Southern Life Insurance Co., 150 Tex. 258, 239 S.W.2d 803 (1951). This rule is applicable to instruments executed in connection with the same transaction when one or more of the instruments are promissory notes. Texas State Bank of Austin v. Sharp, supra; B & B Pharmacy and Drug, Inc. v. Lake Air National Bank of Waco, 449 S.W.2d 340 (Tex.Civ.App.—Waco 1969, writ dism'd); Sides v. Knox, 203 S.W. 65 (Tex.Civ.App. —Texarkana 1918, writ ref'd); Vernon's Tex.Bus. & Comm.Code Ann. § 3.119 (1968).

■ The various instruments mentioned above pertain to the same transaction: ob-

taining permanent financing for the Pendleton Green Apartments. The $1,400,000 note is not the entire contract. Appellants' argument clearly demonstrates that it was not the intent of the parties that the note be the "final contract."

In their attempts to avoid the effect of their default in paying the monthly installments on the note, appellants seek the aid of the $210,000 fund created by the letter of credit. The note contains no reference to the letter of credit and does not provide for payment of the monthly installments out of the funds available to Anchor from the letter of credit. In order to preclude appellees from asserting the terms of the letter of commitment which provided for the establishment and disposition of the $210,000 letter of credit, appellants contend that all previous negotiations are merged into the note which expresses the final agreement of the parties. But the appellees' contention that all prior writings were merged into the note as based upon an alleged "merger clause" contained in a document other than the note: the purchase and sale agreement. The note does not contain a "merger clause." It is apparent that appellants' action is founded largely upon factors alien to the provisions stated in the note and deed of trust.

The "no pre-payment" clause in the note is clearly applicable only to appellants. When read in its entirety, the intent of the parties is evident. The clause provides:

"During a period of seven (7) years from the date of this note there shall be no prepayment option, *thereafter upon payment of a penalty of five (5) percent in the eighth year, reducing one-half of one percent for each year thereafter, to a minimum of one percent for the remaining term of the loan.*" (Emphasis added)

If we were to interpret the clause as applying equally to the holder and the maker of this note (as appellants argue), we would be faced with the novel situation wherein the holder of the note would be forced to pay itself a penalty, if it should for some reason not now apparent, choose to pay off the note itself. We decline to adopt that construction. As we have said: the letter of commitment, as amended; the purchase and sale agreement; the note; and the deed of trust all must be read together.

The amendment of January 4, 1974, to the letter of commitment of November 29, 1973, required that appellants furnish Anchor with a $210,000 irrevocable letter of credit, callable on or before December 30, 1974, in the event that the $251,960.00 annual rental achievement was not realized by Pendleton Green Apartments on or before November 30, 1974. The amendment states: "Proceeds from this letter of credit, if called by us as noted above, would be appli[ed] in reduction of the principal amount of the mortgage herein." The existence of a default by appellants in paying the monthly installments as they became due would not vest Anchor with the right to "draw" on the $210,000 letter of credit. Only a failure to reach a specific "rental achievement" on or before November 30, 1974, would "trigger" Anchor's right to "draw" the $210,000 fund. As we have noted, the parties specifically provided for the application of those funds in such event.

The express provision in the letter of commitment does not conflict with the "no pre-payment" clause found in the note. The clause prohibiting pre-payment is applicable only to appellants. For the reasons stated, it is evident that appellants have shown no probable right to have the $210,000 fund applied to the installment payments in default.

Appellants, in another contention, argue that this Court should construe the "no pre-payment" clause broadly enough to allow it to operate fairly and justly under all the conditions to which it may apply. As we have stated, the contract entered into between the parties, particularly the "no pre-payment" clause is unambiguous

and not subject to more than one reasonable interpretation. Therefore, it is not open to construction, even if giving effect to its literal terms will work a hardship on one of the parties. Magnolia Petroleum Co. v. Connellee, 11 S.W.2d 158 (Tex.Comm'n App.1928); Douglas v. Southwestern Life Insurance Company, 374 S.W.2d 788 (Tex.Civ.App.—Tyler 1964, writ ref'd n. r. e.); Rankin v. Rhea, 164 S.W. 1095 (Tex.Civ.App.—Amarillo 1914, no writ). See National Surety Corporation v. Western Fire & Indemnity Company, 318 F.2d 379 (Cir.Ct.App. 5th Cir. 1963).

█ Finally, appellants argue that the trial court erred in admitting defendants' exhibit 5 into evidence. Appellants contend this exhibit is a compromise offer and was inadmissible. This issue is not dispositive of this case. If the trial court did err in this respect, it was harmless error. Tex.R.Civ.P. 434 (1967).

Because the appellants have failed to show a clear abuse of the trial court's discretion, we overrule all their contentions.

The judgment of the trial court is affirmed.