**David L. McGOODWIN, Appellant,**

v.

**Deborah McGOODWIN, Appellee.**

No. 05–05–00237–CV.

Court of Appeals of Texas, Dallas.

Jan. 6, 2006.

J. Douglas Uloth, Uloth & Peavler, L.L.P., Dallas, for Appellant.

Kirsten M. Castaneda, Locke Liddell & Sapp LLP, Dallas, for Appellee.

Before Justices WHITTINGTON, FRANCIS, and LANG.

## OPINION

Opinion by Justice FRANCIS.

This is a second appeal arising from a dispute regarding payment of a promissory note executed by David McGoodwin and DLM Enterprises, Inc., a closely held corporation, to Deborah McGoodwin. Deborah brought suit against David for breach of contract after he stopped making payments on the promissory note. The trial court granted summary judgment to Deborah and denied David's motion for summary judgment which decision David now appeals. We affirm the trial court's judgment.

On March 15, 1989, as a part of a divorce settlement, David and DLM Enterprises, Inc., a closely held corporation, executed a promissory note for $150,000 to Deborah. Under the terms of the promissory note, David agreed to make interest payments of $1,500 each month until October 15, 1997 at which time he was to make monthly principal payments of $4,166.67 plus accrued interest until the debt was paid in full. David as president of DLM Enterprises, Inc., and Deborah also signed a security agreement providing Deborah would hold 4,000 shares of DLM Enterprises, Inc. stock as collateral to secure the promissory note. The day after the parties signed the note and security agreement, Deborah and David executed their Agreement Incident to Divorce. The parties apportioned the community property so that Deborah received 4,000 shares of DLM Enterprises, Inc. and David received 6,000 shares of DLM Enterprises, Inc. According to the AID, Deborah would receive 4,000 shares of DLM and $150,000 in cash if David died. David made interest payments from March 1989 until December 1991. In December 1991 DLM ceased all business except for the collection of accounts receivable and David made no further payments to Deborah on the note.

Deborah filed suit for payment of the promissory note in October 2001. The trial court granted summary judgment in favor of Deborah awarding her $335,733.76 and denied David's motion for summary judgment. David appealed. In the first

appeal, this Court held, among other issues, the trial court appropriately denied David's motion for summary judgment, but determined Deborah's recovery should have been limited to the six-year period before she filed suit on October 5, 2001. *McGoodwin v. McGoodwin,* 2003 WL 22020781, *3 (Tex.App.-Dallas 2003, pet. denied). The Court reversed the trial court's judgment and remanded the case for further proceedings.

On remand, both David and Deborah filed motions for summary judgment. Once again, the trial court denied David's motion for summary judgment and granted Deborah's motion for summary judgment. In recalculating the money due Deborah based on the previous opinion of this Court, the trial court awarded Deborah $449,669.86 as well as post-judgment interest at a rate of 12% per annum, compounded annually.

■ In his two issues in this second appeal, David first argues that the trial court erred in granting Deborah's motion for summary judgment for seven reasons: (1) his obligation to pay under the note was released by language in the AID; (2) Deborah's efforts to enforce the note constitute a collateral attack on the divorce decree; (3) the note fails due to mutual mistake; (4) the note fails due to failure of consideration; (5) the contract to sell the stock fails from frustration of purpose; (6) the note is subject to the four-year statute of limitations on a debt; and (7) interest on interest accrues beginning on the maturity date of the note. In his second issue, David urges the trial court erred in denying his motion for summary judgment based on his arguments under his first issue.

■ Although David raises issues in this second appeal that were decided against him in the first appeal, David urges this Court to reconsider the entire case because the mandate issued by this court reversed the trial court's judgment and remanded the case "to the court for further proceedings." David argues that the general language of the judgment remands the case to the court below for a new trial on all issues of fact and consequently the case should be reopened in its entirety. We disagree. In interpreting the mandate of the appellate court, we should not only look to the mandate but to the opinion of the court as well. *See Hudson v. Wakefield,* 711 S.W.2d 628, 630 (Tex.1986). In our first opinion, this Court concluded Deborah had shown as a matter of law that the note did not represent a "sale" of 4000 shares of stock but the shares were being held as collateral and would have been released once the payments had been made under the note. Further, the fact that the shares lost value when DLM ceased business did not affect David's promise to pay under the note or frustrate the purpose of obtaining payments under the note. Finally, the Court rejected David's contention that Deborah's claims were barred by the statute of limitations determining the summary judgment in Deborah's favor should not have included payments accruing outside the six-year limitations period determined by the Court to apply to a "note payable at a definite time." The above issues presented in the second appeal being the same as those already resolved in the first appeal will not be reconsidered here (failure of consideration, frustration of purpose, limitations). *See id.* at 630.

We review a summary judgment de novo to determine whether a party's right to prevail is established as a matter of law. *Foreness v. Hexamer,* 971 S.W.2d 525, 527 (Tex.App.-Dallas 1997, pet. denied). In reviewing a traditional summary judgment, we apply well-known standards. *See* Tex.R. Civ. P. 166a(c); *Nixon v. Mr. Prop.*

*Mgmt. Co.,* 690 S.W.2d 546, 548–49 (Tex. 1985). The party moving for summary judgment has the burden of showing no genuine issue of material fact exists and it is entitled to judgment as a matter of law. TEX.R. CIV. P. 166a(c); *Swilley v. Hughes,* 488 S.W.2d 64, 67 (Tex.1972). In deciding whether there is a disputed material fact issue precluding summary judgment, evidence favorable to the non-movant will be taken as true; every reasonable inference must be indulged in favor of the non-movant and any doubts resolved in its favor. *See Nixon v. Mr. Prop. Mgmt. Co.,* 690 S.W.2d 546, 548–49 (Tex.1985); *Espalin v. Children's Med. Ctr. of Dallas,* 27 S.W.3d 675, 682 (Tex.App.-Dallas 2000, no pet.). When both parties move for summary judgment, and one motion is granted while the other is not, the reviewing court should review the summary judgment evidence presented by both sides and determine all questions presented and render the judgment the trial court should have rendered. *Texas Workers' Comp. Comm'n v. Patient Advocates of Tex.,* 136 S.W.3d 643, 648 (Tex.2004).

■ On his argument that his obligation to pay under the note was released by language in the AID, David argues that the merger clause in the AID, providing "... this instrument expresses the entire agreement between the parties concerning the subjects it purports to cover," exempts the promissory note from performance because it falls within the scope of the general release and cannot be enforced. We disagree.

■ "Merger refers to the extinguishment of one contract by its absorption into another contract and is largely a matter of the intention of the parties." *Smith v. Smith,* 794 S.W.2d 823, 827–8 (Tex.App.-Dallas 1990, writ w'drawn). Merger applies only if the last contract is between the same parties, embraces the same subject matter, and must have been so intended by the parties. *Id.* Here, not only were the agreements signed by different parties and dealt with different matters, but clearly the intent of the parties was that the agreements be separate and not absorbed one by the other. Deborah, David individually, and David, as president of DLM Enterprises, Inc. signed the promissory note. But only Deborah and David in his individual capacity signed the AID. David McGoodwin individually, and David McGoodwin as president of DLM Enterprises, Inc. are not the same parties. *See e.g. Fish v. Tandy Corp.,* 948 S.W.2d 886, 898 (Tex.App.-Fort Worth 1997, writ denied). Since different parties signed the promissory note and the AID, there was no merger as a matter of law and, consequently, no release. The promissory note and security agreement dealt with the promise by David and DLM to pay $150,000 to Deborah; the AID dealt with matters incident to the final settlement of the divorce. The promissory note and security agreement were signed the day before the AID was executed, evidencing the intent of the parties that both transactions be separate, valid and made in conjunction with the finalizing of the divorce.

■ Regarding David's argument that Deborah's efforts to enforce the note constitute a collateral attack on the divorce decree, we disagree. When two or more instruments executed contemporaneously or at different times, pertain to the same transaction, the instruments, including promissory notes, will be read together even if they do not expressly refer to each other. *Pendleton Green Assocs. v. Anchor Savs. Bank,* 520 S.W.2d 579, 584 (Tex.Civ. App.-Corpus Christi 1975, no writ).

Deborah testified in her third affidavit that the promissory note was entered into the day prior to signing the AID. The 4,000 shares of DLM Enterprises, Inc. re-

ferred to by Deborah are listed in Schedule 3, attached to the AID, as community property apportioned to Deborah. Similarly, David stated in his first affidavit that the promissory note and security agreement were prepared by Deborah's attorney and presented to him at the meeting where "we finalized the divorce." Even though David stated in his second affidavit that the promissory note "did not relate to or implement the division of our community property," he presents no facts to support his claim that Deborah's attempts to enforce the promissory note are an attempt to divide the community property other than as provided by the family court's decree. David and Deborah signed the promissory note the day before they signed the AID. Further, the promissory note and security agreement were presented to David by Deborah's attorney at a meeting regarding the divorce. We conclude the trial judge did not err in determining that Deborah's efforts to enforce the promissory note was not an impermissible collateral attack on the divorce decree.

 In arguing mutual mistake nullifies the note, the evidence must show that both parties were acting under the same misunderstanding of the same material fact. *Okon v. MBank, N.A.*, 706 S.W.2d 673, 675 (Tex.App.-Dallas 1986, writ ref'd n.r.e.). Because David fails to identify any summary judgment evidence regarding the specific common misunderstandings both he and Deborah held relating to the promissory note, he raises no issue of material fact on the existence of mutual mistake.

Finally, David states that there is a genuine issue of material fact as to the date when post-maturity interest accrues, arguing that interest did not accrue the day each monthly payment became overdue but rather on either September 15, 2000, when the final payment was due or

October 5, 2001, when Deborah accelerated the note. This Court previously held the promissory note was a note payable at a definite time and set the correct statute of limitations at six years prior to the date that Deborah filed suit, or October 5, 1995. *McGoodwin*, 2003 WL 22020781, at *2. Appellant does not claim the promissory note is ambiguous and in fact the note clearly establishes how and when interest accrues. According to the note, "matured unpaid principal and interest shall bear Interest at the rate of . . . 12% per annum from date of maturity until paid" and would accrue until the indebtedness was paid in full. Deborah was entitled to interest payments dating from October 5, 1995. No genuine issue of material fact is presented.

We affirm the trial court's judgment.